UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CLARENCE J. SUMLIN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:24-CV-1272-ZMB |
| | ) | |
| THE CITY OF ST. LOUIS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on self-represented Plaintiff Clarence Sumlin's Amended Employment Discrimination Complaint, Doc. 5. After screening the Amended Complaint under 28 U.S.C. § 1915(e)(2), the Court dismisses Sumlin's claims for failure to state a claim.

**BACKGROUND**

**I. Relevant Facts**[1]

Sumlin worked as a customer service representative ("CSR") for the City of St. Louis Forestry Division. Doc. 5 at 9. In January 2023, Tracy Hoare joined the Division as supervisor, and it did not take long for problems to arise. *Id*. In May 2023, Sumlin emailed his senior leadership about his concerns that "workplace conditions had deteriorated under [Hoare's] leadership." *Id*. at 9; *see* Doc. 5-1 at 1. Among other things, he highlighted the significant backlog of overdue service requests that "Tree CSR[s] are responsible for managing" and described a "negative" workplace that created unfair workloads for "diligent CSRs [like him] who strive to fulfill their responsibilities." Doc. 5-1 at 1. Sumlin thus requested relocation and that his work be exclusively limited to tree processing. *Id*. Notably, however, Sumlin did not mention sex discrimination. *Id*.

[1] As required at this stage, the Court accepts Sumlin's allegations as true and draws all reasonable inferences in his favor. *See Jones v. Douglas Cty, Sherriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019). Additionally, consistent with Federal Rule of Civil Procedure 10(c), the Court will treat the attached exhibits are a part of the pleading. *See Pratt v. Corr. Corp.*, 124 F. App'x 465, 466 (8th Cir. 2005) (finding that attachments to a complaint must be considered in ruling on dismissal).

Sumlin alleges that he "began to experience disparate treatment" shortly after sending the email. Doc. 5 at 9. From June 2023 to February 2024, Sumlin received additional work assignments "not equally given to female colleagues" but also took it upon himself to perform additional work. *See id*. at 9–10. For instance, Sumlin volunteered to help process billing orders for a three-day stint in mid-November because these tasks were lagging. *Id* at 10.

In December 2023, Sumlin underwent a medical procedure that kept him away from work for a month, and he found that the billing backlog remained upon his return. *Id.* While "there appeared to be no urgency from leadership[] nor any accountability directed at [his] female coworkers regarding [the backlog]," Sumlin experienced "renewed and disproportionate pressure to address" the issue upon his return. *Id*. In February 2024, Hoare asked Sumlin to assist with billing. *Id.* He initially declined, citing "the unequal distribution of labor." *Id*. Hoare asked him to explain what he meant in a private meeting, at which point he protested that he had already performed substantial work on the backlog. *Id*. Nevertheless, he agreed to assist and completed approximately 1,500 billing entries over the course of a few days. *Id*.

In return for his contribution, Sumlin "began to feel pressured to continue absorbing tasks that were not being delegated to those originally assigned." *Id*. He then refused to perform more billing tasks the next week. *Id*. Hoard again asked if Sumlin would like to meet privately to discuss his refusal, but he "respectfully declined," which prompted Hoare to issue him a "verbal warning." *Id*. Sumlin responded that he had completed over 600 work orders in a single day, but Hoare "implied" that Sumlin was lying in front of his co-workers. *Id*. This implication upset Sumlin, so he printed a report of his previous work orders and brought it to Hoare's office. *Id*. A conversation ensued, which Sumlin recorded. *Id*.; *see* Doc. 5-1 at 5. In pertinent part, Sumlin told Hoare that he should not have to perform other employees' work merely because they fail to do their jobs efficiently. *Id*. Hoare responded that "billing is a part of [his] job," which Sumlin acknowledged. *Id*. The conversation then concluded with Hoare thanking Sumlin for his "teamwork." *Id*.

In addition to disproportionate workloads, Sumlin also alleges that he was "publicly criticized and mocked." *Id*. at 9. During the summer of 2023, he claims he was "criticized" for transferring calls to his supervisor despite adhering to the procedures set out in a memorandum for call transfers. *Id*. Hoare once "made a comment about the number of voicemails that [she] had . . . [after] being off for several days and [suggested] that [Sumlin] was probably the reason." Doc. 5-1 at 3. Sumlin emailed Hoare about her comments, and she responded, "I was kidding . . . I didn't mean to offend you." *Id*. Sumlin then concluded the exchange by replying: "Thanks for the clarification. It wasn't brought to me in a joking/kidding manner which is no fault of yours which is why I wanted to ask/bring to your attention." *Id*.

**II. Procedural History**

In June 2024, Sumlin filed a charge of discrimination against the City of St. Louis with both the Missouri Commission of Human Rights and the Equal Employment Opportunity Commission. Doc. 5 at 3. The EEOC issued his right-to-sue letter, *id*. at 16, and Sumlin filed his Complaint. Doc. 1. While the Court granted his Application to Proceed In Forma Pauperis, it found the Complaint deficient and ordered Sumlin to file an amended pleading. *Id*. Sumlin filed his Amended Complaint, alleging Title VII violations in the form of sex-based disparate treatment, retaliation, and hostile work environment. Doc. 5 at 9–12. He seeks monetary and punitive damages, as well as declaratory relief and attorney's fees. *Id.* at 12.

## LEGAL STANDARD

Under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court must dismiss a complaint filed in forma pauperis if the action "fails to state a claim on which relief may be granted." To state a viable claim, a complaint must plead more than "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plausible claim also requires more than

the "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

The Court must engage in "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted). In doing so, the Court must "accept as true the facts alleged, but not legal conclusions." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). When reviewing a self-represented litigant's complaint under section 1915, the Court liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). In other words, if a court can discern "the essence of an allegation," it should interpret the complaint in a way that permits it to consider the claim within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). Nevertheless, "even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law." *Jones v. Toyota Motor Mfg. Missouri*, No. 4:25-CV-1749-SRW, 2026 WL 2568308, at *1 (E.D. Mo. Aug. 31, 2026) (citing *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980)). Thus, the Court need not assume unalleged facts. *See Stone v. Harry*, 364 F.3d 912, 914–15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for a self-represented plaintiff). Nor must it interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## DISCUSSION

Having previously granted Sumlin IFP status, the Court now screens the Amended Complaint for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). Even after affording Sumlin substantial leeway as a pro se party, accepting his allegations as true, and drawing all reasonable inferences in his favor, his Amended Complaint fails to state a claim under Title VII. The Court considers each of his Title VII claims in turn and dismisses them all.

## I. Disparate Treatment

Under Title VII, it is unlawful for employers "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of Title VII discrimination, a plaintiff must show that he: (1) is a member of a protected class; (2) was meeting his employer's legitimate job expectations; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated employees who were not members of his protected class. *Ollie v. Mo. Dep't of Mental Health*, No. 4:23-CV-1712-MTS, 2024 WL 1050371, at *2 (E.D. Mo. Feb. 29, 2024) (citing *Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013)). While a plaintiff need not "set forth a detailed evidentiary proffer," the prima facie elements are "part of the background against which a plausibility determination should be made." *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 799 (8th Cir. 2021) (citation omitted).

Sumlin fails to meet his burden for at least two reasons. First, he fails to allege an adverse employment action. To qualify as adverse, an action must result in "some harm to an identifiable term or condition of employment." *Martinez-Medina v. Rollins*, 144 F.4th 1091, 1096 (8th Cir. 2025) (quotation omitted). Sumlin asserts that he received additional billing assignments and a "verbal warning" after refusing to continue that work. Doc. 5 at 9–10. But additional work is not an adverse action if the work is within "the scope of [an employee's] job responsibilities" because such assignments do not constitute a "change in [his] employment conditions." *See Martinez-Medina*, 144 F.4th at 1096–97 (citation omitted). Here, Sumlin concedes that billing was within his job description, *see* Doc. 5-1 at 5, and that he volunteered to perform much of the "extra" work, Doc. 5 at 10. Similarly, a "verbal warning" is not adverse without some change to one's employment. *See Gibson v. Concrete Equip. Co.*, 960 F.3d 1057, 1065 (8th Cir. 2020) ("[W]ritten criticism does not constitute a materially adverse action when it did not result in any change to the terms or conditions of employment" (citation modified)); *see also Pujji v. Buttigieg*, No. 4:21-CV-445-

SEP, 2025 WL 328094, at *11 (E.D. Mo. Jan. 29, 2025) (same for negative performance reviews). Therefore, Sumlin has failed to allege an adverse employment action.

Second, even if the actions were adverse, there is no basis for inferring discrimination on account of Sumlin's sex. To plead that element, Sumlin must "allege facts that similarly situated employees were treated differently" rather than make a "conclusory assertion" of discrimination. *See Hager v. Arkansas Dept. of Health*, 735 F.3d 1009, 1015 (8th Cir. 2013); *see also Jones v. Douglas Cnty. Sheriff's Dep't*, 915 F.3d 498, 500 (8th Cir. 2019) (affirming dismissal because female plaintiff made only a "threadbare allegation" of discrimination and "did not plead any facts showing [a male] was similarly situated"). Though Sumlin asserts that "additional tasks and workloads [were] not equally given to [his] female colleagues," Doc. 5 at 9, he fails to provide sufficient detail to move beyond a conclusory allegation and does not identify a similarly situated female coworkers, such as ones who finished their work but did not receive additional billing assignments. Doc. 5 at 9. Indeed, while Sumlin's conversation with Hoare confirms that he was assigned additional work, Doc. 5-1 at 5, the Amended Complaint contains only allegations about female employees generally, precluding an inference of discriminatory intent. In sum, because Sumlin has not pled either an adverse action or discriminatory intent, the Court dismisses his disparate-treatment claim.

**II. Retaliation**

To establish a prima facie case of retaliation under Title VII, a plaintiff must show "(1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two." *Wilson v. Ark. Dep't of Hum. Servs.*, 850 F.3d 368, 372 (8th Cir. 2017). The Amended Complaint fails on all three fronts.

To satisfy the first element, Sumlin must show that he opposed an employment practice that he reasonably believed was prohibited under Title VII. *See id*. He pleads only one possible protected activity: the May 2023 email to his senior leadership. *See* Doc. 5 at 11; Doc. 5-1 at 1.

Notably, however, his email preceded the discriminatory conduct alleged in the Amended Complaint and lacked any reference to conduct proscribed by Title VII. *See* Doc. 5-1 at 1. In other words, his email was a complaint about poor leadership, not unlawful discrimination. *See Lopez v. Whirlpool Corp.*, 989 F.3d 656, 665 (8th Cir. 2021) (finding no protected activity where plaintiff "did not tie [her HR] complaint to any discrimination, let alone sex discrimination").

Moreover, even if Sumlin had engaged in protected activity, the Amended Complaint fails on the other two elements. As discussed above, Sumlin's additional work and "verbal warning" do not constitute adverse actions. Nor can Sumlin establish a causal connection between those actions and his email. "Generally, something more than temporal proximity is required to establish the necessary causal connection." *Meinen v. Bi-State Dev. Agency*, 101 F.4th 947, 950 (8th Cir. 2024). While there is no bright line establishing when temporal connection is or is not sufficient to satisfy the causation requirement, an important consideration is the length of time between the protected activity and the adverse action. *Id.*; *see also Lors v. Dean*, 746 F.3d 857, 865–66 (recognizing that "more than two months is too long to support a finding of causation without something more" (citation modified)). Here, Sumlin sent his email in May 2023, but the bulk of his additional work and verbal warning occurred in February 2024. With more than eight months separating the events and no supporting allegations connecting the email to Hoare's conduct, Sumlin fails to establish causation. And because the Amended Complaint falls short on all three elements, the Court dismisses Sumlin's retaliation claim.

**III. Hostile Work Environment**

"A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Milano v. Mo. Baptist*

*Univ.*, No. 4:25-CV-1654-ZMB, 2026 WL 2920520, at *4 (E.D. Mo. Sept. 29, 2026) (quoting *Martinez-Medina*, 144 F.4th at 1097). To establish such a claim, an employee must show that: (1) he is a member of the class of people protected by Title VII, (2) he was subject to unwelcome harassment, (3) the harassment resulted from his membership in the protected class, and (4) the harassment was severe enough to affect the terms, conditions, or privileges of his employment. *Id.* To survive a motion to dismiss, the plaintiff must identify "more than a few isolated incidents," and any "alleged harassment must be so intimidating, offensive, or hostile that it poisoned the work environment." *Id.* (citing *Blomker v. Jewell*, 831 F.3d 1051, 1057 (8th Cir. 2016)). Additionally, trial courts must apply "demanding harassment standards to filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Warmington*, 998 F.3d at 799.

The Amended Complaint describes, at worst, ordinary tribulations of the workplace. Sumlin alleges that he was "publicly criticized and mocked," *see* Doc. 5 at 9, but he points to only two specific instances of such conduct that, even when taken together, are not severe enough to affect the conditions of his employment. First, he alleges that he was criticized for transferring calls. Doc. 5 at 9. But Hoare told Sumlin that she "was kidding" and "didn't mean to offend [him]," and Sumlin acknowledged the remarks were in jest. *See* Doc. 5-1 at 3. This teasing is a far cry from the "severe and pervasive" standards of Title VII. *See Warmington*, 998 F.3d at 799–800 (holding that seven instances of harassing conduct described as "vile or inappropriate" did not constitute a hostile work environment). The second alleged incident—where Hoare publicly "implied" that Sumlin was lying about how much he worked—is similarly innocuous. *See* Doc. 5 at 10. These two alleged incidents, separated by nearly four months, are far too mild and attenuated to constitute a hostile work environment.

## CONCLUSION

Accordingly, after conducting an initial review under 28 U.S.C. § 1915(e)(2)(B), the Court **DISMISSES** this case without prejudice. A separate Order of Dismissal will follow.

So ordered this 23rd day of October 2026.

ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE